IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**JOEL RUIZ and MARIA Ruiz, husband and**
**Wife; and JOEL Z. RUIZ, individually**,

            Plaintiff,

   v.

**HAMMER & NAILS, LLC, an Idaho limited**
**liability company; OLDCASTLE MATERIALS,**
**INC., a Delaware corporation; and STAKER**
**& PARSON COMPANIES, a Utah Corporation d/b/a**
**IDAHO CONCRETE COMPANY**,

           Defendants.

No. 2:10-CV-1021-SU

OPINION AND ORDER

**MOSMAN, J.**,

      Judge Sullivan issued her findings and recommendation ("F&R") [80] on defendant

Idaho Concrete Company's ("ICC") Motion for Summary Judgment [50] on August 13, 2013.

Plaintiff has brought claims for strict products liability, negligence, and violation of the Oregon

Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. §§ 646.608 and 646.638, against defendant

ICC.  (Plaintiff has also brought claims against defendant Hammer & Nails, LLC. These claims

are not at issue here.)  Judge Sullivan recommended that summary judgment be DENIED as to

all claims against defendant ICC.

I ADOPT the F&R in part.  I agree that summary judgment is inappropriate on plaintiff's strict products liability and negligence claims against defendant ICC (plaintiff's second, fourth, and fifth claims), as there are genuine disputes of material fact on these claims.  Thus, I ADOPT the F&R insofar as it denies summary judgment on these claims, although I discuss the negligence claims further below to clarify a point of law.  However, I find that plaintiff's UTPA claim against defendant ICC is time-barred by the statute of limitations, and thus plaintiff's seventh claim for relief must be dismissed as to defendant ICC.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections.  I am not bound by the recommendations of the magistrate judge; instead, I retain responsibility for making the final determination.  I am required to review de novo those portions of the report or any specified findings or recommendations within it as to which an objection is made.  28 U.S.C. § 636(b)(1).  However, I am not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no party has objected.  *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  While the level of scrutiny I am required to apply to the F&R depends on whether objections have been filed, in either case I am free to accept, reject, or modify any part of the F&R.  28 U.S.C. § 636(b)(1).

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion and providing evidence in support of its motion that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If that burden is met, the non-

moving part must "present significant probative evidence tending to supports its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation omitted). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The court must view inferences in the light most favorable to the nonmoving party. *T.W. Electric Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## BACKGROUND

The parties do not dispute Judge Sullivan's thorough factual discussion of the case. However, the import of certain facts is in dispute. I discuss these facts below as relevant.

## ANALYSIS

### I.   Statute of Limitations for Unfair Trade Practices Act Violations

Judge Sullivan concluded that the UTPA's one-year statute of limitations had not run when plaintiff filed suit in August 2010 because the UTPA violation was not discovered until plaintiff received a forensic report ("the MCI report") indicating that the major cause of the foundation's breakdown was excess water in the concrete mix in September 2009. (F&R [80] at 15–16.) Defendant objects, arguing that plaintiff discovered the alleged violation of the UTPA in April or May of 2009 and thus the one-year limitations period had run by the time suit was filed in August 2010. (Def's Obj'n. [82] at 6–9.)

Private causes of action under the UTPA must be "commenced within one year from the discovery of the unlawful method, act or practice." Or. Rev. Stat. § 646.638(6). The Oregon discovery rule applies to this provision: this rule provides that a statute of limitations begins to run "when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the . . .

elements [of the claim] exists." *Gaston v. Parsons*, 318 Or. 247, 256, 864 P.2d 1319, 1324 (1994). In this context, "substantial possibility" means less than "[a]ctual knowledge that each element is present," but more than a "mere suspicion." *Id.*

Although plaintiffs do not specify which provision(s) of the UTPA their claims arise under, Judge Sullivan reasonably concluded they likely arise under OR. REV. STAT. § 646.608(1)(e), which provides that it is a violation for an entity to "[represent] that . . . goods or services have . . . characteristics, ingredients, [or] benefits . . . that they do not have." (F&R [80] at 16.) The statute is violated by ordinary negligence. Or. Rev. Stat. § 646.605(10); *State ex rel. Redden v. Disc. Fabrics, Inc.*, 209 Or. 375, 385, 615 P.2d 1034, 1039 (1980). Thus, in order to prevail plaintiffs must show that the defendant knew or should have known that a representation it made was not true. *Redden*, 289 Or. at 385, 615 P.2d at 1039.

Under the discovery rule, plaintiffs discovered the violation when they became aware of facts making it *substantially possible* that defendant negligently misrepresented the suitability of the concrete for use in the foundation. The relevant facts are as follows: In April 2009 plaintiffs discovered that pieces of the concrete forming their home's foundation were flaking off. They called the foreman of Hammer & Nails, Russ Nelson, to have him look at the foundation. (Ruiz Aff. [60] ¶ 9.) They then contacted ICC. ICC inspected the foundation and took some of the flakes of concrete for testing. (Ruiz Aff. [60] ¶ 10.) The tests were performed by the original concrete supplier, Ash Grove, and the results indicated that sulfates likely caused the problem. (*Id.* at ¶ 11.) The test report also indicated that "[a]n examination of the concrete itself (a core or chunk) would need to be performed to determine [whether a sulfate attack is occurring]." (Ruiz Aff. [60], Ex. A (Ash Grove Rpt.); Tharp Aff. [59], Ex. N (Bloom Depo. at 49:20–50:9).) Mr. Ruiz doubted that sulfates or other compounds in the soil were the cause of the problem because

other structures in the area (where presumably the soil is of the same character) did not have the same problem with their foundations.   He decided to investigate further.  (Ruiz Aff. [60] ¶¶ 12–15.)

This initiated a discussion between the parties about who would pay for further testing. (Ruiz Aff. [60] ¶ 15.)  The parties all agreed at that time that, while Mr. Ruiz would initially pay for the testing, if the test showed a defect in the concrete the party responsible for the defect would be responsible for the costs.  (Tharp Aff. [59], Ex. K (Shoemaker Depo. 14/9–17/8); Ruiz Aff. [60] ¶ 15; *see also* Pl's Resp. to MSJ [58] at 12.)

Plaintiff argues that a fraud or misrepresentation by the defendants tolled the statute of limitations by delaying plaintiff's discovery of the UTPA violation.  Plaintiff argues that defendants "misrepresented" the nature of the problem with the home's foundation when they indicated in May 2009, at the time the Ash Grove report was received, that sulfates in the soil were the cause of the problem.  (Pl's Resp. to Def's Obj'n. [83] at 7.)  Plaintiff alleges that IC "attributed the defective foundation to alkali in the soil."  (Ruiz Aff. [60] ¶ 14.)

In cases where fraud or misrepresentation is alleged, Oregon courts apply the discovery rule under the following test: "First, it must appear that plaintiff had sufficient knowledge to excite attention and put a party upon his guard or call for an inquiry.  If a plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose the fraud.'" *Mathies v. Hoeck*, 284 Or. 539, 542–43, 588 P.2d 1, 3 (Or. 1978) (internal quotations omitted); *see also McCulloch v. Price Waterhouse LLP*, 157 Or. App. 237, 247–48, 971 P.2d 414, 420 (1998).

Plaintiffs rely on two cases in particular to support the conclusion that this rule applies in this case.  In *Adams v. Or. State Police*, 289 Or. 233, 611 P.2d 1153 (1980), the state police had

towed the plaintiff's car. When he called them to ask about his vehicle, they affirmatively stated

that they had not towed it. *Id.* at 236. Eight months later the plaintiff got his car back, and only

then learned that the state police had, in fact, been the ones to tow it. *Id.* In *McCulloch*, 157 Or.

App. at 237, 971 P.2d at 414, the plaintiff received letters from the IRS stating that his tax

returns, prepared by defendant, were untimely and that the plaintiff was being audited. *Id.* at

248. Defendant then affirmatively misrepresented to plaintiff that the letters from the IRS had

been sent in error and that defendant would take care of the problem. *Id.* This was not true, as

the plaintiff found out months later when the IRS met with him and informed him that he was

being audited and that his tax returns had not been accepted. *Id.* at 249. The court held that

there was a genuine issue of material fact as to whether the plaintiff had *reasonably* relied on

defendant's misrepresentation; if he had, the statute of limitations would not have begun to run

until plaintiff's meeting with the IRS revealed the misrepresentation made by defendant. *Id.*

        Plaintiffs' misrepresentation theory in this case is not borne out by the facts. Plaintiffs

allege that defendants "misrepresent[ed] to plaintiffs, without a reasonable basis in fact, that the

soil was defective, including that it was contaminated with too much alkali and that it was the

defective soil that caused Plaintiff's foundation to be unsuitable." (Compl. [1] ¶ 46(e); *see* Ruiz

Aff. [60] ¶ 14.) Even if defendants made this representation to plaintiffs, they did so based on

the initial Ash Grove report, so they had a reasonable basis in fact. (Ruiz Aff. [60] Ex. A.) More

importantly, no one disputes that the report was inconclusive; in fact, elsewhere in their brief

plaintiffs base an argument on this very fact. (Pl's Resp. to Obj'n [83] at 6.) Thus, while

plaintiff has alleged misrepresentations, the facts not only suggest that plaintiff could not have

reasonably relied on them (because the report was inconclusive on its face) but that plaintiff *did

not* rely on them. Plaintiff Mr. Ruiz states that while he "initially" believed the explanation, he

quickly thereafter "indicated that [he] wanted a second opinion and asked that [defendants] participate in the cost of this second opinion." (Ruiz Aff. [60] ¶ 14–15; Shoemaker Depo. 14:9–17:8.)  Plaintiffs then sought further testing of the concrete's core, as suggested by the writer of the Ash Grove report. (*See* Ruiz Aff. [60] ¶ 15; Resp. to MSJ [58] at 12–15.)  Further, even taking what occurred in the light most favorable to plaintiff, it appears that a "reasonably diligent inquiry" begun at this time did in fact disclose the fraud, as the tests ordered ultimately resulted in the finding that the concrete had a high cement-to-water ratio.

I find that Plaintiffs cannot rely on the fraud or misrepresentation version of the discovery rule to toll the running of the statute of limitations until September 2010.  The initial investigation was inconclusive, and thus further investigations were undertaken.  These investigations ultimately informed plaintiffs that they had a potential cause of action against the parties responsible for pouring their home's foundation.

I find that by May of 2009 plaintiffs knew or should have known that a potential violation of the UTPA had occurred.  This is indicated by several factors.  First, plaintiffs immediately contacted defendants to ask about the apparent breakdown of the foundation.  Second, once the initial test results came in, plaintiffs took the position that the defendants should pay for the additional testing.  This is a clear indication that they were aware of a substantial possibility that each of the elements of their UTPA claim existed.  They clearly had more than a mere suspicion that defendants were responsible for the foundation's breakdown.  I find that such a suspicion was reasonable under the circumstances.  Because plaintiffs knew or should have known that a potential violation of the UTPA had occurred in May 2009, their complaint for that violation is untimely because it was filed outside the one-year statute of limitations for UPTA claims.

## II.  __Negligence under the Theory of *Res Ipsa Loquitur*__

Plaintiff pled two separate claims (claims four and five) against defendant ICC based on negligence, framing one as "negligence" and the other as an "alternative" claim of negligence under a theory of *resp ipsa loquitur*.  (Comp. [1] ¶¶ 44–53.)  While I agree with Judge Sullivan's determination that summary judgment is inappropriate on these claims, as there is a dispute of material fact as to whether defendant ICC was negligent in the provision of the concrete for plaintiffs' home's foundation, I write to clarify that *res ipsa loquitur* should be treated at trial as an alternative *theory* of liability rather than an alternative claim for relief.  *See McKee Electric Co. v. Carson Oil Co.*, 301 Or. 339, 353, 723 P.2d 288, 296 (1986); *Hammer v. Fred Meyer Stores, Inc.* 242 Or. App. 185, 190–91, 255 P.3d 598, 601 (2011); *see also* Restatement (Second) of Torts § 328D (1965) (describing the *res ipsa loquitur* theory of negligence).

In order to proceed under a theory of *res ipsa loquitur*, the plaintiff must show (1)  an injury; (2) that the injury is of a type that ordinarily does not occur in the absence of negligence; and (3) that the negligence that caused the occurrence was "more probably than not attributable to a particular defendant."  *Hammer*, 242 Or. App. at 190–191, 242 P.2d at 601.  Whether the facts allow the inference of negligence is a question of law for the court.  Restatement (Second) of Torts § 328D.  As Judge Sullivan notes, Oregon courts allow an inference of negligence in cases involving multiple defendants where it is shown that each defendant was involved in the injurious act.  *Umpqua Acquaculture, Inc. v. Ron's Welding and Fabricators, Inc.* 111 Or. App. 220, 224–25, 826 P.2d 31, 33 (1992); *see also Fieux Cardiovascular & Thoracic Clinic, P.C.*, 159 Or. App. 637, 643–46, 978 P.2d 429, 433–34 (1999).  While the plaintiff must establish the elements of the doctrine before an inference of negligence will be permitted, *see Hammer*, 242 Or. App. at 190–91, the ultimate factual issue for the jury is negligence, *see Umpqua Aquaculture*, 111 Or. App. at 223, 826 P.2d at 32.  Thus, if Judge Sullivan ultimately determines

that an inference of negligence may appropriately go to the jury, plaintiffs may proceed at trial using the theory of *res ipsa loquitur* to prove their negligence claim.

## CONCLUSION

For the reasons discussed above, I ADOPT the F&R [80] in part.  It is ORDERED AND ADJUDGED that plaintiff's claim for violation of the UTPA by defendant ICC is barred by the statute of limitations and is thus DISMISSED.  Defendant ICC's Motion for Summary Judgment [50] is DENIED as to all other claims.

IT IS SO ORDERED.

DATED this ___27th___ day of September, 2013.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge